EDMUND G. BROWN JR.
Attorney General of the State of California
DANE R. GILLETTE
Chief Assistant Attorney General
GERALD A. ENGLER
Senior Assistant Attorney General
PEGGY S. RUFFRA
Supervising Deputy Attorney General
VIOLET M. LEE, State Bar No. 77144
Deputy Attorney General
 455 Golden Gate Avenue, Suite 11000
 San Francisco, CA  94102-7004
 Telephone:  (415) 703-5896
 Fax:  (415) 703-1234
 Email:  Violet.Lee@doj.ca.gov

Attorneys for Respondent

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **LACY WINZER,** | C 08-2341 PJH (PR) |
| Petitioner, | **ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS** |
| **v.** | |
| **BILL CURREY, Warden,** | |
| Respondent. | |

Respondent provides this answer to the petition for writ of habeas corpus:

**I.**

**CUSTODY**

Petitioner Lacy Winzer was convicted by a jury in Contra Costa County Superior

Court of robbery and petty theft with a prior (Cal. Penal Code §§ 211/212.5, subd. (c), 484/666).

Exh. 1.  On April 14, 2006, the trial court sentenced petitioner to five years in prison.  Exh. 1.

On August 29, 2007, the California Court of Appeal affirmed the judgment.  Exh. 2.

//

//

## II.

## EXHAUSTION OF STATE REMEDIES

Petitioner presented three issues:  (1)  The trial court's failure to instruct on battery/assault as a lesser included offense violated his right to an instruction on his theory of defense; (2) the trial court's instructions were insufficient to inform the jurors of the necessary nexus between force and intent needed for robbery; (3) his counsel was ineffective.

On May 22, 2008, this Court issued an order to show cause which dismissed the second claim because it presented only a state-law question which cannot be the basis for federal habeas relief.  The Court ordered respondent to respond to the first and third claims.

Petitioner raised the first claim in his petition for review in the California Supreme Court.  Exh. 3.  The California Supreme Court denied review.  Exh. 4.  Therefore, that claim is exhausted.

Petitioner raised a claim of ineffective assistance of counsel in his petition for review in the California Supreme Court.  Exh. 3 at 24.  However, petitioner did not argue in the California Supreme Court that counsel was ineffective "by failing to show the relevancy of the original T-Shirt evidence to the jury," which he includes in his petition.  Pet. at 26.  Nonetheless, despite petitioner's failure to exhaust this claim, this Court can deny the claim on the merits.  28 U.S.C. § 2254(b)(2).

## III.

## TIMELINESS

The petition is timely.  Section 2244(d) of 28 U.S.C. provides that a petition for writ of habeas corpus challenging a state court judgment must be filed within one year from the date on which the judgment became final by the conclusion of direct review or the expiration of time for seeking such review.  Direct review includes the period for seeking certiorari.  A case becomes final when certiorari has been denied by the Supreme Court or the time for filing a petition for certiorari (90 days from denial of petition for review) has expired.  *See* Rules of the Supreme Court of the United States, Rule 13.1.

On October 2, 2007, petitioner filed a petition for review in the California Supreme

Answer to Pet. for Writ of HC

1  Court.  Exh. 3.  On November 15, 2007, the California Supreme Court denied review.  Exh. 4.

2  Petitioner filed his federal habeas corpus petition on May 6, 2008.  Therefor, his habeas petition

3  in this Court is timely.

4                                                    **IV.**

5                                     **DENIAL OF CLAIMS**

6          Respondent denies that petitioner suffered any deprivation of federal constitutional

7  rights supporting federal habeas corpus relief.  In support of this answer and denial of claims,

8  respondent incorporates the memorandum of points and authorities which accompanies this

9  answer.

10                                                   **V.**

11                              **AVAILABLE STATE RECORDS**

12         Respondent is submitting a copy of the relevant portions of the state trial record and

13  state appellate record, which are identified in the accompanying index of records.

14                                                  **VI.**

15                                        **CONCLUSION**

16         WHEREFORE, respondent respectfully requests that the petition be denied.

17         Dated:  July 16, 2008

18                                         Respectfully submitted,

19                                         EDMUND G. BROWN JR.
                                           Attorney General of the State of California

20                                         DANE R. GILLETTE
21                                         Chief Assistant Attorney General

                                           GERALD A. ENGLER
22                                         Senior Assistant Attorney General

                                           PEGGY S. RUFFRA
23                                         Supervising Deputy Attorney General

24

25                                         /s/ Violet M. Lee

26                                         VIOLET M. LEE
                                           Deputy Attorney General
27                                         Attorneys for Respondent

28

Answer to Pet. for Writ of HC                                          Winzer v. Currey
                                                                       C 08-2341 PJH (PR)

3

1

20122537.wpd

2   SF2008401838

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Answer to Pet. for Writ of HC                                    Winzer v. Currey
                                                                 C 08-2341 PJH (PR)

1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  GERALD A. ENGLER
   Senior Assistant Attorney General
4  PEGGY S. RUFFRA
   Supervising Deputy Attorney General
5  VIOLET M. LEE, State Bar No. 77144
   Deputy Attorney General
6    455 Golden Gate Avenue, Suite 11000
     San Francisco, CA  94102-7004
7    Telephone:  (415) 703-5896
     Fax:  (415) 703-1234
8    Email:  Violet.Lee@doj.ca.gov

9  Attorneys for Respondent

10              IN THE UNITED STATES DISTRICT COURT

11          FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                  SAN FRANCISCO DIVISION

13
    **LACY WINZER,**                          C 08-2341 PJH (PR)
14
                                Petitioner,
15
          **v.**
16
    **BILL CURREY, Warden,**
17
                                Respondent.
18

19
             **MEMORANDUM OF POINTS AND AUTHORITIES**
20

21

22

23

24

25

26

27

28

1

# TABLE OF CONTENTS

2

**Page**

3    STATEMENT OF THE CASE ............................................................. 1

4    STANDARD OF REVIEW UNDER AEDPA ........................................ 2

5    STATEMENT OF FACTS ................................................................. 2

6    ARGUMENTS ............................................................................... 5

7        **I.**    **PETITIONER'S CLAIM THAT HE WAS ENTITLED TO INSTRUCTIONS ON LESSER INCLUDED OFFENSES HAS NO MERIT** .................................................................. 5

8

9            A.   Court Of Appeal's Opinion ............................................. 5

10           B.   Discussion ................................................................ 10

11               1.   Petitioner Presents No Federal Question ..................... 10

12               2.   No Substantial Evidence Supports Instructions On Assault And Battery ............................................................. 11

13

14               3.   Petitioner Was Not Prejudiced ................................. 13

15       **II.**   **PETITIONER WAS NOT DEPRIVED OF EFFECTIVE ASSISTANCE OF COUNSEL** ............................................. 13

16   CONCLUSION ............................................................................. 18

17

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

**Page**

3

**Cases**

4

5

*Babbitt v. Calderon*
151 F.3d 1170 (9th Cir. 1998) ........................................................... 14

6

*Bashor v. Risley*
730 F.2d 1228 (9th Cir. 1984) ........................................................... 11

7

*Beck v. Alabama*
447 U.S. 625 (1980) ........................................................... 10, 11

8

9

*Bell v. Cone*
535 U.S. 685 (2002) ........................................................... 14

10

*Brecht v. Abrahamson*
507 U.S. 619 (1993) ........................................................... 13

11

12

*Ceja v. Stewart*
97 F.3d 1246 (9th Cir. 1996) ........................................................... 12

13

*Clabourne v. Lewis*
64 F.3d 1373 (9th Cir. 1995) ........................................................... 12

14

15

*Himes v. Thompson*
336 F.3d 848 (9th Cir. 2003) ........................................................... 2

16

*Hopper v. Evans*
456 U.S. 605 (1982) ........................................................... 11

17

18

*James v. Reese*
546 F.2d 325 (9th Cir. 1976) ........................................................... 11

19

*Menendez v. Terhune*
422 F.3d 1012 (9th Cir. 2005) ........................................................... 12

20

21

*Miller-El v. Cockrell*
537 U.S. 322 (2003) ........................................................... 2

22

*Solis v. Garcia*
219 F.3d 922 (9th Cir. 2000) ........................................................... 11

23

24

*Strickland v. Washington*
466 U.S. 668 (1984) ........................................................... 13, 14

25

*Tolbert v. Page*
182 F.3d 677 (9th Cir. 1999) ........................................................... 11

26

27

*Turner v. Marshall*
63 F.3d 807 (9th Cir. 1995) ........................................................... 11

28

**TABLE OF AUTHORITIES  (continued)**

Page

*Williams v. Taylor*
529 U.S. 362 (2000)                                                        2

*Windham v. Merkle*
163 F.3d 1092 (9th Cir. 1998)                                             11

*Woodford v. Visciotti*
537 U.S. 19 (2002)                                                         2

*Yarborough v. Gentry*
540 U.S. 1 (2003)                                                         14


**Statutes**


Title 28 United States Code
          § 2254(d)(1)                                              2, 10, 14
          § 2254(d)(2)                                                 2, 17

**Other Authorities**

Antiterrorism and Effective Death Penalty Act of 1996                     2

California Jury Instructions, Criminal
          No. 9.40                                                       14
          No. 9.40.2                                                     14
          No. 9.40.3                                                     14

1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  GERALD A. ENGLER
   Senior Assistant Attorney General
4  PEGGY S. RUFFRA
   Supervising Deputy Attorney General
5  VIOLET M. LEE, State Bar No. 77144
   Deputy Attorney General
6   455 Golden Gate Avenue, Suite 11000
    San Francisco, CA  94102-7004
7   Telephone:  (415) 703-5896
    Fax:  (415) 703-1234
8   Email:  Violet.Lee@doj.ca.gov

9  Attorneys for Respondent

10              IN THE UNITED STATES DISTRICT COURT

11            FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                   SAN FRANCISCO DIVISION

13
   LACY WINZER,                          C 08-2341 PJH (PR)
14
                          Petitioner,    **MEMORANDUM OF POINTS**
15                                        **AND AUTHORITIES  IN**
                                          **SUPPORT OF ANSWER**
16          v.

   BILL CURREY, Warden,
17
                          Respondent.
18

19

20               **STATEMENT OF THE CASE**

21          On August 16, 2005, a jury found petitioner Lacy Winzer guilty of robbery and petty theft

22  with a prior.  Exh. 1.  On April 14, 2006, the trial court sentenced petitioner to five years in prison.

23  Exh. 1.

24          On August 29, 2007, the California Court of Appeal affirmed the judgment in an

25  unpublished decision.  Exh. 2.

26          On October 2, 2007, petitioner filed a petition for review in the California Supreme Court.

27  Exh. 3.  On November 15, 2007, the California Supreme Court denied review.  Exh. 4.

28          On May 6, 2008, petitioner filed the instant petition for writ of habeas corpus.  On May

1   22, 2008, this Court issued an order to show cause requiring respondent to respond to two of the

2   three claims raised in the petition.

3                         **STANDARD OF REVIEW UNDER AEDPA**

4           This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996

5   (AEDPA), which imposes a "highly deferential" standard for evaluating state court rulings and

6   "demands that state court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537

7   U.S. 19, 24 (2002) (per curiam). Under AEDPA, the federal government has no authority to grant

8   habeas relief unless the state court's ruling was "contrary to, or involved an unreasonable application

9   of," clearly established Supreme Court precedent. 28 U.S.C. § 2254(d)(1). A decision is "contrary

10  to" law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on

11  a question of law, or reaches a different conclusion based on facts materially indistinguishable from

12  a Supreme Court case. *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A decision constitutes an

13  "unreasonable application" of Supreme Court precedent if the state court's application of law to the

14  facts is not merely erroneous, but objectively unreasonable. *Id*. at 411-413.[1] A state court's ruling

15  based on a factual determination also must be "'objectively unreasonable' in light of the record" to

16  warrant habeas relief. *Miller-El v. Cockrell*, 537 U.S. 322, 348 (2003); 28 U.S.C. § 2254(d)(2). The

17  petitioner bears the burden of showing that the state court's decision was unreasonable. *Woodford*

18  *v. Visciotti*, 537 U.S. at 25.

19                              **STATEMENT OF FACTS**

20          The California Court of Appeal found the facts as follows:

21          A. PROSECUTION EVIDENCE AT TRIAL

22          Alex Azevedo (Azevedo) was employed as a "protection specialist" at the Target
        store in Pittsburg on May 10, 2005. Around 4:00 p.m. he was at the front door of the
23      store, dressed in a Target uniform, greeting customers. Winzer, known to Azevedo,
        entered the store with an adult female companion. Winzer, who was not carrying
24      anything, got a shopping cart and pushed it toward the men's department.

25

26   _____

27      1. Where the state court denies relief without a reasoned opinion, the federal habeas court
     does not review the claim de novo; it does "perform an 'independent review of the record' to
28   ascertain whether the state court decision was objectively unreasonable." *Himes v. Thompson*, 336
     F.3d 848, 853 (9th Cir. 2003).

1    Coworker Tommy Weaver joined Azevedo and "call[ed] out" Winzer's presence to
     asset protection specialist Blake Rogers (Rogers).  A "call out" is made to undercover
2    security personnel, who are authorized to apprehend an individual, when someone
     suspicious enters the store.

3

4    Azevedo went to the security office in the front of the store to observe Winzer on a
     monitor.  Rogers was in a security office in the back of the store, watching the monitors
5    with his supervisor, David De La Torre (De La Torre).  The monitors in the back security
     office display live images from 60 surveillance cameras.  The store security monitors
     show a steady stream of clear images, like a television.

6

7    Rogers and De La Torre in the back security office, and Azevedo in the front security
     office, observed Winzer take a package of Fruit of the Loom T-shirts from a shelf in the
8    men's department and place it in the top part of his shopping cart.  Winzer's female
     companion appeared to be a lookout.  Winzer walked about 15 feet, took the package of
9    T-shirts out of the shopping cart, and lifted up his shirt or sweater.  He then turned away
     from the security camera, but Rogers, Azevedo, and De La Torre saw him make the
10   motion of putting something down the front of his pants.  When Winzer turned to face the
     camera again, the package of T-shirts was no longer visible.

11   When Rogers saw Winzer conceal the merchandise, he left the security office to
     observe Winzer in person.  De La Torre continued watching Winzer on the monitors.
12   Rogers and De La Torre remained in contact by walkie-talkie.

13   Rogers testified that he observed Winzer and his female companion walk to the front
     of the store.  Winzer parked the shopping cart and walked toward the exit.  Rogers was
14   about 10-15 feet behind him.  As Winzer was crossing the threshold, Winzer looked back.
     Rogers, who was in plainclothes and by this point five feet away, immediately identified
15   himself as Target security and attempted to grab Winzer by the arm.  Winzer had just
     walked out the door and Rogers was still inside the store.  Winzer then squared himself
16   and struck Rogers in the face approximately three times with his closed fist.  Rogers,
     trained in nonviolent physical intervention, struggled to gain control of Winzer and
17   continued to identify himself as Target security and tell Winzer to stop resisting.  Winzer
     and Rogers ended up on the ground in front of the store.

18

19   Rogers could not recall at trial whether he touched Winzer first or Winzer hit him
     first.  At Winzer's preliminary examination, Rogers had testified that first he grabbed
20   Winzer's arms, and then Winzer broke away with one arm and hit him.

21   De La Torre, watching the security monitors, observed Rogers being hit by Winzer.
     He could not remember at trial whether Rogers touched Winzer first or whether Winzer
22   hit Rogers first.  His recollection was that, at the time of the punch, Winzer was outside
     the store and Rogers was inside, right around the threshold.

23   Azevedo testified that he came out of the front security office when Winzer was
     about five feet in front of the exit doors.  Rogers approached Winzer and, after Winzer
24   stepped over the threshold, Winzer turned around and Rogers identified himself as Target
     security and asked Winzer to stop.  Rogers then reached out to grab or grabbed Winzer's
25   arm, and Winzer hit Rogers approximately twice.  Winzer and Rogers wrestled outside
     the store.  Azevedo heard Rogers yelling, "Target security.  Stop resisting.  Stop
26   resisting."

27   Joseph Mahoney, a 17-year-old high school student, was standing outside of Target,
     about five feet from Target's entrance doors, waiting for his grandmother.  Mahoney
28   "heard like a bunch of yelling coming out of, like, the doors."  He turned toward the doors

and saw Winzer run out of the store, followed by a white male (Rogers) about three footsteps behind. He did not recall specifically what was being said, but thought it was the white male, a "security guy," who was speaking. The two men started fighting, grabbed one another, got to the street area, and rolled on the ground. The white male tried to handcuff the other man (Winzer), who continued to struggle. Two more Target "security guys" jumped on Winzer. On cross-examination, Mahoney testified that he had not known that the white male was a Target security person when he first came out of the store. He further testified as follows: "Q. Did you ever hear this white male say out loud: [']I'm Target Security[']? [] A. No. [] Q. Did you hear him -- strike that. [] And did you see this white male touch the black male first? [] A. Yes."

Azevedo helped Rogers gain control over Winzer and handcuffed him. Rogers, Azevedo, and De La Torre escorted Winzer to the front security office, where he was handcuffed to a bench. Azevedo and De La Torre saw the package of T-shirts protruding from Winzer's waistband. De La Torre removed the package from Winzer and placed it on a desk. There was pubic hair on the package. As they waited for police to arrive, Azevedo said to Winzer, "You know you're going to jail because you assaulted [Rogers]." Winzer replied, "No, I'm not." "I'm not going to jail. I have my ways. I'll get out."

Pittsburg Police Officer Michelle Ligouri responded to the scene. Officer Ligouri saw the package of T-shirts on the desk in the security office and noticed pubic hair on the package and on the table around the package. A search by the officer determined that Winzer was not wearing underwear. Officer Ligouri took pictures to document Rogers' injuries but forgot to collect the T-shirts as evidence.

Because the T-shirts had pubic hair on them, De La Torre instructed one of his employees to photograph the shirts and then dispose of them for health reasons, after he had obtained permission from the police department. De La Torre believed that photographing and discarding the evidence complied with Target policy and procedures, until confronted with the written Target directive indicating that the T-shirts seized from Winzer should have been stored. Rogers acknowledged that discarding the package of T-shirts was not in compliance with Target's operating procedures.

The next day, Officer Ligouri called Target about the T-shirts and was informed that the shirts had been thrown away. A similar package of T-shirts was provided to police as evidence.

At trial, the jury was shown photographs of Rogers' injuries, indicating red marks on his temple and cheek and an injury to his elbow. The jury was also shown a time-lapse videotape from a Target surveillance camera, which De La Torre had compiled and given to the police.[2] This videotape included zoom-in shots depicting Winzer concealing the package of T-shirts. The videotape was not as clear as the steady stream of images on the monitors in Target's security offices, because the videotape was comprised of still photos taken every two to three seconds, causing the tape to look choppy. Rogers described the quality of the video shown to the jury as "horrible."

---

[2] In this regard, De La Torre did not comply with Target's polices and procedures, which required that he retain the non-time-lapse video of the incident. He explained at trial that he gave the police the time-lapse video because it was easier to record and compile in chronological sequence.

//

//

In the 10 months Rogers had worked at Target, he had been written up twice by supervisor De La Torre:  once in December 2004 for assisting a Target employee apprehend a suspected shoplifter while Rogers was off duty, and once in April 2005 for detaining someone who did not have Target items on him.  In the latter incident, Rogers had seen the individual take some merchandise out of a package, but the individual had apparently discarded them when Rogers lost sight of him.  De La Torre testified that Rogers did not do anything improper in this case.  (Rogers had acknowledged that he mistakenly wrote in his incident report that Winzer had stolen socks rather than T-shirts.

. . . . . . . .

C.  DEFENSE EVIDENCE AT TRIAL

Winzer did not testify.  Officer Ligouri testified that Mahoney told her he heard a lot of movement.  She also testified that Rogers did not tell her that he said anything to Winzer when they were on the ground or when Winzer was being handcuffed.

In closing argument, defense counsel argued:  the prosecution's witnesses failed to follow Target's internal operating directives and Rogers had been written up in the past; there was no evidence Winzer took any merchandise from Target because Target did not retain the package; and when Winzer hit Rogers, he was "not fighting back to retain property" but just defending himself, because Winzer had no merchandise, Rogers did not look like Target security and did not identify himself as Target security, and Rogers accosted Winzer from behind.

Exh. 2 at 2-6.

## ARGUMENT

### I.

### PETITIONER'S CLAIM THAT HE WAS ENTITLED TO INSTRUCTIONS ON LESSER INCLUDED OFFENSES HAS NO MERIT

Petitioner contends that the trial court's failure to instruct on assault and battery as lesser included offenses of the charged offense of robbery violated his right to an instruction on his theory of defense.

**A.  Court Of Appeal's Opinion**

Petitioner argued on appeal that the trial court should have instructed on assault and battery as lesser included offenses of robbery.  The Court of Appeal rejected the argument, reasoning as follows:

B.  JURY INSTRUCTIONS

At the conference to settle jury instructions after the People had rested their case, the court rejected the notion that battery was a lesser-included offense of robbery and refused to give an instruction on battery.[3]  The court agreed to give, and subsequently gave,

1    several jury instructions relating to robbery, including CALJIC Nos. 9.40, 9.40.2, and
2    9.40.3.
_____

3    [3] The reporter's transcript indicates that the court asked if "anybody disagree[d]" on this point, and neither defense counsel nor the prosecutor voiced any objection. During a later
4    hearing on Winzer's motion for a new trial, the court nonetheless agreed with defense counsel that the battery instruction had been requested by the defense.

5    . . . . . . . .

6

7    II.  DISCUSSION

8        Winzer contends that the trial court should have instructed on battery and assault as lesser-included offenses of robbery, because there was substantial evidence that he struck
9    Rogers not with the intent to steal the Target merchandise secreted in his pants, but in self-defense against the attack of an unknown assailant. He also contends that the trial
10   court erred in failing to instruct the jury of the required nexus between the force he exerted and an intent to steal. Neither argument has merit.

11       A.  FAILURE TO INSTRUCT ON ASSAULT OR BATTERY AS LESSER
          INCLUDED OFFENSE
12
13       A trial court must instruct on a lesser offense necessarily included in the charged offense if there is substantial evidence the defendant is guilty only of the lesser. (*People
     v. Birks* (1998) 19 Cal.4th 108, 118 (*Birks*); *People v. Breverman* (1998) 19 Cal.4th 142,
14   162 (*Breverman*) [court not obligated to instruct sua sponte on lesser offense unless there is substantial evidence from which reasonable jury could conclude that the lesser offense,
15   but not the greater, was committed].) We consider first whether battery or assault may be considered a lesser included offense of robbery. We then determine whether an
16   instruction on battery or assault was required in light of the evidence. We conclude that the court did not err in this regard and, in any event, any purported error was harmless.

17
18       1.  Assault and Battery as Lesser-Included Offenses of Robbery

19       Two alternative tests are used to determine whether a lesser offense is necessarily included in a greater offense. (*People v. Moon* (2005) 37 Cal.4th 1, 25.) Under the
20   elements test, the lesser crime is included if all of its legal elements are included in the definition of the greater crime, such that the greater cannot be committed without
21   committing the lesser. (*Ibid.*) Under the accusatory pleading test, the lesser crime is included if the accusatory pleading describes the greater offense in language such that the
22   offender, if guilty, must necessarily have also committed the lesser crime. (*Id.* at pp. 25-26.)

23       Robbery is defined as "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by
24   means of force or fear." (§ 211.) By contrast, a battery "is any willful and unlawful use of force or violence upon the person of another." (§ 242.) Thus, battery requires use "of
25   force or violence," while robbery requires "force or fear." Because it is possible to commit robbery without committing battery, battery is not a lesser included offense of
26   robbery under the elements test. (*People v. Romero* (1943) 62 Cal.App.2d 116, 121.)

27       Winzer argues, however, that battery was a lesser included offense of robbery in this case under the accusatory pleadings test. In accusing Winzer of robbery, the information
28   alleged that he, "by means of force and fear, did unlawfully take" personal property

belonging to another.  (Italics added.)  Winzer argues that the force required for battery is not materially different than the force required for robbery.  Therefore, he urges, battery (requiring force) is a lesser included offense of the robbery alleged in the information (referring to both fear and force).

The allegation that the robbery was perpetrated by means of "force and fear," rather than "force or fear," was merely a function of conjunctive pleading.  Conjunctive pleading is employed to avoid uncertainty.  (*In re Bushman* (1970) 1 Cal.3d 767, 775 (*Bushman*), disapproved on other grounds in *People v. Lent* (1975) 15 Cal.3d 481, 486, fn. 1; *People v. Tuggle* (1991) 232 Cal.App.3d 147, 154, disapproved on other grounds, *People v. Jenkins* (1995) 10 Cal.4th 234, 252; *People v. Fritz* (1970) 11 Cal.App.3d 523, 526; see also *People v. Chacon* (1995) 37 Cal.App.4th 52, 62, fn. 4.)  In *Bushman*, for example, the complaint had charged malicious disturbance of the peace by "'tumultuous and offensive conduct.'"  (*Bushman*, *supra*, at p. 774.)  The court held it was nevertheless proper to instruct the jury that the defendant could be found guilty if, in accord with the statute, he committed tumultuous or offensive conduct.  (*Ibid.*)  The court explained: "When a statute such as Penal Code section 415 lists several acts in the disjunctive, any one of which constitutes an offense, the complaint, in alleging more than one of such acts, should do so in the conjunctive to avoid uncertainty.  [Citations.]  Merely because the complaint is phrased in the conjunctive, however, does not prevent a trier of fact from convicting a defendant if the evidence proves only one of the alleged acts.  [Citation.]" (*Bushman*, *supra*, at p. 775, italics added.)  We question whether the accusatory pleading test was intended to be met by allegations asserted merely to satisfy our Supreme Court's directive to plead in the conjunctive.

On the other hand, it is literally true that a defendant who exerts "force and fear" in an attempt to deprive another of personal property has committed a battery (willful and unlawful use of force upon the person of another), unless the use of "force" upon the person of another can be accomplished by something other than a physical touching.  On this point, respondent refers us to *People v. Wright* (1996) 52 Cal.App.4th 203 (*Wright*), which held that assault was not a lesser included offense of robbery under the accusatory pleading test.  (See *id.* at p. 211.)[4]

---

[4] In this appeal, Winzer argues that assault is also a lesser included offense under the accusatory pleading test.  Assault is "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." (§ 240.)  Winzer did not request an assault instruction, although a court must also instruct on a lesser included offense sua sponte, if there is substantial evidence that the lesser crime was committed rather than the greater.  (*Birks*, *supra*, 19 Cal.4th at p. 118.)  A defendant may be entitled to an assault instruction on request when charged with robbery if the evidence warrants it.  (*Wright*, *supra*, 52 Cal.App.4th at p. 209, fn. 16; *People v. Carter* (1969) 275 Cal.App.2d 815, 823-824.)

In *Wright*, the prosecution had charged that the defendants "'unlawfully, and by means of force and fear attempt[ed] to take personal property'" from the victims.  (*Wright*, *supra*, 52 Cal.App.4th at pp. 209-210, italics in original.)  The Court of Appeal considered whether the force required to commit a robbery necessarily includes the force required to commit an assault.  (*Id.* at p. 210.)  The court concluded that the force necessary to commit robbery could be merely "constructive" force, defined as "'force not actual or direct, exerted upon the person robbed, by operating upon [a] fear of injury . . . .'" (*Id.* at p. 210.)  Included within the meaning of "force," therefore, is "'such threat or display of physical aggression toward a person as reasonably inspires fear of pain, bodily harm,

or death.'" (*Id.* at pp. 210-211, italics in original, quoting Webster's New Internat. Dict. (3d ed. 1981) p. 887.)

Applying *Wright* to the matter before us, respondent argues that a victim can be forced to surrender his property during a robbery by the means of coercive threats, without resort to assault or battery. Since a robbery could be perpetrated by a mere threat or display of physical aggression rather than an actual (or attempted) application of force upon the victim's person, robbery can be committed without necessarily committing a battery or assault and, consequently, neither battery nor assault is a lesser included offense under the accusatory pleading test.

Winzer responds that *Wright* improperly muddied the concepts of fear and force, which are intended to be separate elements. (See *People v. Davison* (1995) 32 Cal.App.4th 206, 214; *People v. Brew* (1991) 2 Cal.App.4th 99; (1984) 153 Cal.App.3d 623, 628; *People v. Cuevas* (2001) 89 Cal.App.4th 689, 698.) More specifically, he contends that *Wright* (1) effectively rewrote the robbery statute by ruling that force is not an element of robbery independent of fear, since the statute provides that robbery can be accomplished by force or fear; (2) incorrectly concluded that force is synonymous with fear; and (3) relied on cases involving whether a defendant's actions constituted force or fear, rather than addressing a pleading that alleged both force and fear. Winzer also notes that our Supreme Court has not decided whether assault and battery are lesser included offenses of robbery under the accusatory pleading test. (*People v. Sakarias* (2000) 22 Cal.4th 596, 622, fn. 4 (*Sakarias*).)

We need not decide this issue in order to resolve Winzer's appeal. For purposes of our analysis we will assume, without deciding, that battery and assault were lesser included offenses of the robbery charge under the accusatory pleading test, and proceed to the next issue. (See *Sakarias*, *supra*, 22 Cal.4th at p. 622 [in absence of substantial evidence that defendant entered victim's home or attacked victim without an intent to steal, court declined to address defendant's claim that assault was a necessarily included offense of robbery under the accusatory pleading test].)

2. Substantial Evidence of Assault and Battery

Winzer does not challenge the jury's finding that he committed theft of the T-shirts or dispute that he struck Rogers while he was leaving Target with the purloined merchandise concealed in his pants. Rather, he contends that the force he used on Rogers supported a conviction only for battery (or assault), not robbery, because he did not strike Rogers with the intent to steal the merchandise. (*People v. Green* (1980) 27 Cal.3d 1, 54 (*Green*) ["the act of force or intimidation by which the taking is accomplished in robbery must be motivated by the intent to steal"], overruled on other grounds in *People v. Dominguez* (2006) 39 Cal.4th 1141, 1155 & fn. 8.) Claiming there was substantial evidence that his intent was not to steal, he urges that he was entitled to an instruction on battery or assault as a lesser-included offense. (See *Breverman*, *supra*, 19 Cal.4th at p. 162.) The question, therefore, is whether there is an evidentiary basis from which a reasonable jury could believe that Winzer hit Rogers to defend himself rather than to steal the T-shirts.

Winzer argues that the following constitutes such substantial evidence: Rogers was in plain clothes; according to Rogers' preliminary hearing testimony admitted at trial, Rogers grabbed Winzer by the arm before Winzer hit Rogers in the face; although Rogers and Azevedo testified that Rogers identified himself as Target security before he grabbed Winzer, high-schooler Mahoney, the only eyewitness at trial who was not a Target employee, testified that he observed the action outside the store from about five feet away and did not hear Rogers identify himself as Target security; and Rogers had been written

up twice before by his supervisor. If the jurors believed Mahoney, Winzer argues, they might have found that Winzer hit Rogers in self-defense, without any intent related to stealing the T-shirts.

We begin with Mahoney's testimony, since the parties dispute how it should be construed. Mahoney testified that he "heard like a bunch of yelling coming out of, like, the doors," and he believed it was the white male (Rogers) who was speaking. Mahoney could not remember what the yelling was about. On cross-examination, Mahoney testified that he did not hear Rogers identify himself as Target security: "Q. Did you ever hear this white male say out loud: [']I'm Target Security[']? [] A. No."

Mahoney's testimony, taken in isolation, is subject to different interpretations. Given his testimony that he heard Rogers yelling something at Winzer but did not remember what it was, his further testimony that he did not hear Rogers identifying himself as Target security could simply mean he did not remember any such statement. As such—and this is respondent's interpretation—his testimony is not necessarily inconsistent with Rogers' and Azevedo's testimony that Rogers did identify himself. Alternatively, Mahoney's testimony could be interpreted to mean that, although he did not remember exactly what Rogers said to Winzer, he knows it was not an identification of Rogers as Target security. This would support Winzer's position.

The problem with Mahoney's admitted lack of memory, however, is exacerbated by the fact that he did not observe the entire incident. Mahoney testified that he turned to look toward the doors when he heard yelling, and at that point saw Winzer running out the door with Rogers about three steps behind. Rogers testified at trial that he first identified himself as Target security when he was about five feet away from Winzer, just as Winzer walked out the door, while Rogers was still inside the store. Azevedo's testimony also suggests that Rogers was still inside the store when Rogers first identified himself as Target security. Mahoney's testimony as to what was said after Rogers and Winzer were outside the store was not in conflict with the evidence that Rogers identified himself before that point. In other words, Mahoney only provided evidence that Rogers did not identify himself as Target security by the time Mahoney observed them, and from what Mahoney could understand them saying, but not that Rogers failed to identify himself at all, including some earlier point, before he was hit by Winzer. As such, we question whether Mahoney's testimony can be considered credible and of solid value, as required of substantial evidence, on the assertion that Winzer was unaware that Rogers was Target security when he hit him in the face.[5]

_____
[5] Mahoney also testified that he did not realize Rogers was a Target security person when he saw him struggling with Winzer, because Rogers was dressed in street clothes. However, Mahoney's state of mind is not probative of Winzer's state of mind: Rogers, unlike Mahoney, knew at the time of the struggle that he was walking out Target's door with stolen merchandise in his pants. Rogers was thus far more likely to expect that the person trying to apprehend him was a Target employee.

Moreover, in deciding whether the evidence cited by Winzer constitutes substantial evidence, we must determine whether the jury could reach the conclusion that Winzer was not motivated by an intent to steal when he hit Rogers in light of all the evidence at trial. The undisputed evidence showed that Winzer took a package of T-shirts off of a shelf, turned his back to the security camera as his companion acted as a lookout, secreted the package down the front of his pants, and then walked out the door of the store without paying for it. The undeniable inference is that Winzer harbored an intent to steal the T-shirts, including at the point he crossed the threshold and was confronted by Rogers.

Given this evidence, no reasonable juror could conclude, even if Rogers was in plain clothes, had not announced himself as Target security, and had grabbed Winzer's arm, that Winzer's reaction in repeatedly striking Rogers' face was unrelated to Winzer's intent to steal the T-shirts he had concealed in his pants.

Indeed, Winzer did not testify and the defense presented no evidence that, when he hit Rogers, Winzer was operating under the belief that he had to defend himself against a stranger attacking him for no reason. Not once did he claim to Target security or to the police that he thought he was being accosted by someone other than Target security, even when he was being placed in handcuffs, led to the security office, held there until the police arrived, and then arrested. To the contrary, when Azevedo told Winzer while waiting for the police, "You know you're going to jail because you assaulted [Rogers]," Winzer simply replied, "No, I'm not." "I'm not going to jail. I have my ways. I'll get out."[6]

_____
[6] Winzer's reliance on *People v. Turner* (1990) 50 Cal.3d 668 (Turner) is accordingly misplaced. In *Turner*, the defendant testified that he did not form an intent to steal until after killing his victim, and therefore he did not steal by force or fear and was entitled to an instruction on theft as a lesser included offense of robbery. (*Id.* at p. 690.) The Supreme Court agreed that the defendant's testimony, though less than convincing, constituted substantial evidence requiring the instruction. (*Ibid.*) *Turner* is distinguishable: the defendant in Turner testified as to his intent; Winzer did not.

Nor would the fact that Rogers had previously been written up by De La Torre in other incidents persuade a reasonable jury that Rogers had failed to identify himself as Target security. The previous incidents pertained to assisting a coworker apprehend a suspect when off duty and detaining a person who took merchandise out of a package; neither has anything to do with a failure to identify himself as Target security.

In the final analysis, Winzer failed to present substantial evidence that his striking of Rogers was unmotivated by his intent to steal. The trial court was therefore not required to instruct the jury on battery or assault.

Exh. 2 at 5, 7-14.

**B.    Discussion**

**1.    Petitioner Presents No Federal Question**

In *Beck v. Alabama*, 447 U.S. 625 (1980) (*Beck*), the Supreme Court held that a defendant in a capital murder case has a constitutional right to have the jury instructed on a lesser included offense in certain instances, in order to relieve the jury from an all-or-nothing resolution. *Id.* at 638. The Supreme Court limited its holding to capital cases and reserved judgment on whether due process requires the giving of lesser offense instructions in a non-capital case. *Id.* at 638, n.14. In the absence of clearly established Supreme Court law expressly imposing such a requirement in non-capital cases, habeas relief is unavailable under 28 U.S.C. § 2254(d)(1).

1       The Ninth Circuit has made clear that *Beck* is limited to capital cases, and that failure to

2   give lesser offense instructions in non-capital cases presents no federal question. *Solis v. Garcia*,

3   219 F.3d 922, 939 and n.7 (9th Cir. 2000) (*Solis*); *Windham v. Merkle*, 163 F.3d 1092, 1106 (9th Cir.

4   1998); *Turner v. Marshall*, 63 F.3d 807, 819 (9th Cir. 1995), overruled on other grounds in *Tolbert*

5   *v. Page*, 182 F.3d 677 (9th Cir. 1999); *James v. Reese*, 546 F.2d 325, 327 (9th Cir. 1976).

6       In *Solis*, 219 F.3d 922, 929, the Ninth Circuit noted that it had previously stated in *Bashor*

7   *v. Risley*, 730 F.2d 1228 (9th Cir. 1984) (*Bashor*) that the general rule—failure of a state court to

8   instruct on a lesser offense fails to present a federal constitutional question—may not apply to every

9   habeas corpus review "because the criminal defendant is also entitled to adequate instructions on

10  his or her theory of defense." *Bashor*, 730 F.2d at 1240. The *Solis* court clarified that the general

11  rule applies across the board:

12      In 1989, the Supreme Court issued its opinion in *Teague v. Lane*, 489 U.S. 288, 103
    L.Ed.2d 334, 109 S.Ct. 1060 (1989), which, in effect prevented this court from modifying

13  our holding, in *Bashor*, in subsequent habeas corpus cases. In *Teague*, the Court
    announced a new rule that "habeas corpus cannot be used as a vehicle to create new

14  constitutional rules of criminal procedure unless those rules would be applied
    retroactively to all defendants on collateral review through one of the two exceptions we

15  have articulated." *Id*. at 316. We subsequently held that *Teague* barred this Court from
    changing the law regarding failure to instruct errors in the context of a habeas petition.

16  *Turner v. Marshall*, 63 F.3d 807, 819 (9th Cir. 1995), overruled on other grounds by
    *Tolbert v. Page*, 182 F.3d 677 (9th Cir. 1999). Consequently, we adhere to the law as

17  stated in *Bashor* and its predecessors.[7]
    _____

18  [7]Our statement, in *Windham v. Merkle*, 163 F.3d 1092, 1106, that "Under the law of this
    circuit, the failure of a state trial court to instruct on lesser included offenses in a

19  noncapital case does not present a federal constitutional question," was a restatement of
    the general rule of *Bashor*, 730 F.2d at 1240, and did not announce a new rule of law.

20

21  *Solis*, 219 F.3d at 929.

22      Petitioner's contention that the trial court should have instructed on assault and battery as

23  lesser included offenses of robbery presents no federal question. Therefore, it should be dismissed.

24      **2.**   **No Substantial Evidence Supports Instructions On Assault And Battery**

25      Even if petitioner's contention presents a federal question, and assuming assault and

26  battery can be lesser included offenses of robbery, petitioner's claim has no merit because the state

27  court reasonably found there was no substantial evidence to support instructions on assault and

28  battery. *See Hopper v. Evans*, 456 U.S. 605, 611 (1982) ("But due process requires that a lesser

1   included offense instruction be given *only* when the evidence warrants such an instruction."); *Ceja*

2   *v. Stewart*, 97 F.3d 1246, 1254 (9th Cir. 1996); *Clabourne v. Lewis*, 64 F.3d 1373, 1380-82 (9th Cir.

3   1995).

4        Petitioner argued at trial that he did not strike Blake Rogers, Target's asset protection

5   specialist, with the intent to steal the T-shirts that he had concealed in his pants.  Rogers was in

6   plainclothes.  Exh. 2 at 3.  Petitioner argued that he was simply trying to defend himself when

7   Rogers attacked him.

8        In his habeas petition, petitioner contends that if the jury had been instructed on assault

9   and battery, it "might well have found" that he was responding "to an unidentified attacker by

10  fighting back, without any intent related to the taking of the T-shirts . . . ."  Pet. at 14.  Petitioner

11  states, "When Rogers grabbed him, mere excited reflex caused petitioner to strike Rogers, not any

12  thought of evading apprehension for a crime petitioner felt he had already gotten away with."  Pet.

13  at 15.  Petitioner was just crossing the threshold of the store when Rogers identified himself as

14  Target security and attempted to grab petitioner by the arm.  Exh. 2 at 2-3.

15       The Court of Appeal's opinion provides a full description of the evidence presented at

16  trial.  Exh. 2.  The Court of Appeal correctly concluded that in light of all the evidence, "no

17  reasonable juror could conclude, even if Rogers was in plainclothes, had not announced himself as

18  Target security, and had grabbed Winzer's arm, that Winzer's reaction in repeatedly striking Rogers'

19  face was unrelated to Winzer's intent to steal the T-shirts he had concealed in his pants."  Exh. 2 at

20  13.  The Court of Appeal added:

21       Indeed, Winzer did not testify and the defense presented no evidence that, when he
         hit Rogers, Winzer *was* operating under the belief that he had to defend himself against
22       a stranger attacking him for no reason.  Not once did he claim to Target security or to the
         police that he thought he was being accosted by someone other than Target security, even
23       when he was being placed in handcuffs, led to the security office, held there until the
         police arrived, and then arrested.  To the contrary, when Azevedo told Winzer while
24       waiting for the police, "You know you're going to jail because you assaulted [Rogers],"
         Winzer simply relied, "No, I'm not."  "I'm not going to jail.  I have my ways.  I'll get
25       out."

26  Exh. 2 at 13-14, footnote omitted.

27       Because there was no substantial evidence to support instructions on assault and battery,

28

1   the trial court's failure to give them did not violate petitioner's right to due process. *See Menendez*

2   *v. Terhune*, 422 F.3d 1012, 1029 (9th Cir. 2005) (state court's finding of insufficient evidence to

3   warrant the giving of an instruction on imperfect self-defense is entitled to presumption of

4   correctness).

5          **3.    Petitioner Was Not Prejudiced**

6          Any error in failing to instruct on assault and battery did not have "a substantial and

7   injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S.

8   619, 637 (1993). The Court of Appeal found that 'the overwhelming evidence" of petitioner's guilt

9   rendered any error in failing to instruct on assault and battery harmless. Exh. 2 at 15-16. In light

10  of the overall evidence showing that petitioner was caught red-handed stealing a package of T-shirts

11  from Target, the failure to give assault and battery instructions did not prejudice petitioner by having

12  a substantial and injurious effect or influence on the jury's verdict.

13                                        **II.**

14  **PETITIONER WAS NOT DEPRIVED OF EFFECTIVE ASSISTANCE**
    **OF COUNSEL**

15

16         Petitioner contends that his trial counsel was ineffective for failing to request "specific

17  clarifying instructions on the robbery count." Pet. at 24. Petitioner argues that counsel should have

18  asked the court to "make clear that there was *no robbery* if there was a reasonable doubt as to

19  whether petitioner assaulted Rogers with the specific intent to retain the T-shirts." Pet. at 24.

20         The Court of Appeal rejected petitioner's contention that trial counsel should have

21  requested an instruction that the force by which the taking is accomplished in robbery must be

22  motivated by the intent to steal. Exh. 2 at 16. The state court reasoned:

23         Defense counsel did not request this instruction at trial. Winzer contends that the
           omission constituted ineffective assistance of counsel. Because the instructions were
24         adequate as given, however, Winzer does not establish that counsel's failure to request the
           instruction was prejudicial, and the ineffective assistance is thus without merit.
25

26  Exh. 2 at 16 n.7

27         To establish a claim of ineffective assistance of counsel, petitioner must demonstrate that

28  his counsel failed to act in a manner to be expected of reasonably competent attorneys acting as

1  diligent advocates. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In addition, petitioner must

2  demonstrate prejudice—that there is a reasonable probability that but for counsel's unprofessional

3  errors, the result of the proceeding would have been different. *Id*. at 693-94.

4      Judicial scrutiny of counsel's performance must be highly deferential, and a court must

5  indulge a strong presumption that counsel's conduct falls within the wide range of reasonable

6  professional assistance. *See Strickland*, 466 U.S. at 689. The relevant inquiry is not what defense

7  counsel could have done, but rather choices that defense counsel made were reasonable. *See Babbitt*

8  *v. Calderon*, 151 F.3d 1170, 1173 (9th Cir. 1998).

9      "[A] court need not determine whether counsel's performance was deficient before

10  examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object

11  of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an

12  ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be

13  so, that course should be followed." *Strickland v. Washington*, 466 U.S. at 697.

14      Further, for petitioner to succeed, "he must do more than show that he would have

15  satisfied *Strickland's* test if his claim were being analyzed in the first instance, because under §

16  2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the

17  state-court decision applied *Strickland* incorrectly." *Bell v. Cone*, 535 U.S. 685, 698-699 (2002).

18  Rather, petitioner must show that the state court applied *Strickland* to the facts of his case in an

19  objectively unreasonable manner. *Id*. Thus, federal habeas review of a claim of ineffective

20  assistance is "doubly deferential." *Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (per curiam).

21      Trial counsel was not ineffective for failing to request a clarifying instruction that "there

22  is *no robbery* if there was a reasonable doubt as to whether petitioner assaulted Rogers with the

23  specific intent to retain the T-shirts." Pet. at 24. The court instructed the jury on robbery with

24  CALJIC Nos. 9.40, 9.40.2, and 9.40.3 as follows:

25      Now the defendant is charged in Count One of the Information of having committed
        the crime of robbery in violation of section 211 of the Penal Code.

26

27      Every person who takes personal property in the possession of another, against the
        will and from the person or immediate presence of that person, accomplished by means
        of force or fear and with the specific intent permanently to deprive that person of the
28      property, is guilty of the crime of robbery in violation of Penal Code section 211.

1    The words "takes or taking" require proof of one taking possession of the personal

2    property; and two, carrying it away for some distance, slight or otherwise.

3    "Immediate presence", means an area within the alleged victim's reach, observation or control, so that he or she could, if not overcome by violence or prevented by fear, retain possession of the subject property.

4    "Against the will", means without consent.

5    In order to prove this crime, that is in order to prove the crime of robbery, each of the

6    following must be proved:

7    A person had possession of property of some value, however slight;

8    2, the property was taken from that person or from his or her immediate presence;

9    3, the property was taken against the will of that person;

10    4, the taking was accomplished either by force or fear; and

11    5, the property was taken with the specific intent permanently to deprive that person

12    of the property.

13    . . . . . .

14    To constitute the crime of robbery, the perpetrator must have formed the specific intent to permanently deprive the person of possession of that property, before or at the

15    time that the act of taking the property occurred.

16    If this intent was not formed until after the property was taken from the person or immediate presence of the victim, the crime of robbery has not been committed.

17    Robbery, among other things, requires that the victim be in possession of the

18    property stolen.

19    There are two kinds of possession:  Actual possession and constructive possession.

20    Actual possession requires that a person knowingly exercise direct physical control over a thing.  Constructive possession does not require actual possession, but does require

21    that a person knowingly exercise control over or the right to control the thing, either directly or through another person or persons.

22    One person may have possession alone, or two or more persons together may share

23    actual or constructive possession.

24    A store employee exercises control or the right to control store property, if the employee is under the circumstances has either express or implied authority over the store

25    property.

26    A store employee may be the victim of a robbery, even though he or she is not the owner and not at the moment in immediate control of the allegedly stolen property, so

27    long as that employee is in constructive possession of the property at the time of the taking.

28    The requisite force or fear needed to establish a robbery need not occur at the time

of the initial taking.  Assuming all the other required elements have been proven, the use of force or fear to escape with or otherwise retain even temporary possession of the property constitutes robbery.

It is not an essential element to the crime of robbery that the use of force or fear be used to gain direct physical possession of the property taken.

Again, assuming all other elements have been proven, a robbery is committed if an individual uses force or fear to retain possession of the property prior to reaching a place of relative safety.

RT 279-282.[2]

From these instructions, the jury understood that robbery requires the taking of property by force or fear, or the retention of property by force or fear.  RT 280, 282.  The jury also would have understood from these instructions that the use force or fear, without any connection to the taking or retention of property, does not constitute a robbery.  Therefore, counsel had no obligation to request clarifying language to inform the jury that "there was *no robbery* if there was a reasonable doubt as to whether petitioner assaulted Rogers with the specific intent to retain the T-shirts."  Pet at 24.  The jury knew from the instructions that no robbery was proven if petitioner assaulted Rogers without any intent or motive to retain the T-shirts he had hidden in his pants.

Furthermore, petitioner was not prejudiced by counsel's failure to request clarifying language.  As the Court of Appeal found:

> The undisputed evidence showed that Winzer took a package of T-shirts off of a shelf, turned his back to the security camera as his companion acted as a lookout, secreted the package down the front of his pants, and then walked out the door of the store without paying for it.  The undeniable inference is that Winzer harbored an intent to steal the T-shirts, including at the point he crossed the threshold and was confronted by Rogers.  Given this evidence, no reasonable juror could conclude, even if Rogers was in plainclothes, had not announced himself as Target security, and had grabbed Winzer's arm, that Winzer's reaction in repeatedly striking Rogers' face was unrelated to Winzer's intent to steal the T-shirts he had concealed in his pants.

Exh. 2 at 13.

Thus, there is no reasonable probability that petitioner would have obtained a more favorable result if counsel had requested clarifying language that "there was *no robbery* if there was a reasonable doubt as to whether petitioner assaulted Rogers with the specific intent to retain the T-

---

2. "RT" refers to the reporter's transcript of trial which is included with our exhibits.

1   shirts." Pet. at 24. The state court's denial of relief was not unreasonable.

2           Finally, petitioner argues that "Trial and Appellate counsel provided ineffective assistance

3   of counsel by failing to show the relevancy of the original T-Shirt evidence to the jury." Pet. at 26.

4   Petitioner contends that "[t]he jury had a right to see and feel the real (original) T-shirt evidence."

5   Pet. at 26.

6           Petitioner did not raise this claim in the California Supreme Court, as he acknowledges.

7   Pet. at 27. However, despite petitioner's failure to exhaust this claim, this Court can deny the claim

8   on the merits. 28 U.S.C. § 2254(b)(2).

9           Counsel was not ineffective for failing to show the jury the "original T-Shirt evidence."

10  Pet. at 26. Petitioner was apprehended as he was leaving the store. He was taken to a security

11  office. A Target security person, David De La Torre, saw the package of T-shirts protruding from

12  petitioner's waistband. De La Torre removed the package. There was pubic hair on the package.

13  When Officer Michelle Ligouri responded to the scene, she saw the package of T-shirts on the desk

14  in the security office and noticed pubic hair on the package and on the table around the package.

15  Petitioner was not wearing underwear. Officer Ligouri forgot to collect the T-shirts as evidence.

16  Because the T-shirts had public hair on them, De La Torre instructed one of his employees to

17  photograph the shirts and then dispose of them for health reasons, after he had obtained permission

18  from the police department. De La Torre believed that he had complied with Target operating

19  procedures until he was informed that the T-shirts seized from petitioner should have been stored.

20  The next day, Officer Ligouri called Target about the T-shirts and was informed that they had been

21  thrown away. A similar package of T-shirts was provided to police as evidence. Exh. 2 at 4.

22          By the time of trial, the original T-shirts were not available because they had been thrown

23  away. Counsel cannot be faulted for failing to show the original T-shirts to the jury. Nor can she

24  be faulted for objecting to the use of a reasonable facsimile of the original T-shirts. There was no

25  reason to present the jury with the original package, which had pubic hair on it. Which particular

26  package petitioner took off the shelf of Target and secreted inside his pants was not in dispute.

27  Indeed, petitioner did not genuinely contest that he took the T-shirts. His defense was that he did

28  not commit a robbery because when he hit Rogers, he did not know Rogers was part of Target's

1  security.  Exh. 2 at 6.

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## CONCLUSION

2     For the foregoing reasons, the petition should be denied, the order to show cause

3 discharged, and these proceedings dismissed.

4     Dated:  July 17, 2008

5                                Respectfully submitted,

6                                EDMUND G. BROWN JR.
                                Attorney General of the State of California

7                                DANE R. GILLETTE
                                Chief Assistant Attorney General

8                                GERALD A. ENGLER
                                Senior Assistant Attorney General

9

10                                PEGGY S. RUFFRA
                                Supervising Deputy Attorney General

11

12                                /s/ Violet M. Lee

13                                VIOLET M. LEE
                                Deputy Attorney General

14                                Attorneys for Respondent

15   20122560.wpd
     SF2008401838
16

17

18

19

20

21

22

23

24

25

26

27

28

Mem. of Ps & As In Support of Answer - *Winzer v. Currey* - C 08-2341 PJH (PR)

1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  GERALD A. ENGLER
   Senior Assistant Attorney General
4  PEGGY S. RUFFRA
   Supervising Deputy Attorney General
5  VIOLET M. LEE, State Bar No. 77144
   Deputy Attorney General
6    455 Golden Gate Avenue, Suite 11000
     San Francisco, CA  94102-7004
7    Telephone:  (415) 703-5896
     Fax:  (415) 703-1234
8    Email:  Violet.Lee@doj.ca.gov

9  Attorneys for Respondent

10

11            IN THE UNITED STATES DISTRICT COURT

12          FOR THE NORTHERN DISTRICT OF CALIFORNIA

13                SAN FRANCISCO DIVISION

14

| | |
|---|---|
| **LACY WINZER,** | C 08-2341 PJH (PR) |
| Petitioner, | **INDEX OF EXHIBITS** |
| **v.** | |
| **BILL CURREY, Warden,** | |
| Respondent. | |

20  EXHIBIT 1    Abstract of Judgment

21  EXHIBIT 2    California Court of Appeal Opinion

22  EXHIBIT 3    Petition for Review (California Supreme Court, Case no. S156813, filed Oct. 2, 2007)

23

24  EXHIBIT 4    California Supreme Court denied the petition for review (filed Nov. 14, 2007)

    EXHIBIT 5    Reporter's Transcript (part I, Vol. I, pp. 1 to 96)
25
    EXHIBIT 5    Reporter's Transcript (part II, Vol. I, pp. 97-175)
26
    EXHIBIT 5    Reporter's Transcript (part III, Vol. I, pp. 176-238)
27
    EXHIBIT 5    Reporter's Transcript (part IV, Vol. I, pp 239-290)
28

1    EXHIBIT 5      Reporter's Transcript (part V, Vol. II, pp. 291-345)

2    EXHIBIT 5      Reporter's Transcript (part VI, Vol. II, pp. 346-376)

3          Dated:  July 16, 2008

4                Respectfully submitted,

5                EDMUND G. BROWN JR.
                    Attorney General of the State of California

6                DANE R. GILLETTE
                    Chief Assistant Attorney General

7

8                GERALD A. ENGLER
                    Senior Assistant Attorney General

9                PEGGY S. RUFFRA
                    Supervising Deputy Attorney General

10

11                /s/ Violet M. Lee

12

13                VIOLET M. LEE
                    Deputy Attorney General
                    Attorneys for Respondent

14

15    20123837.wpd

16    SF2008401838

17

18

19

20

21

22

23

24

25

26

27

28

Index of Exhibits                                Winzer v. Currey
                                                         C 08-2341 PJH (PR)